**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Fort Defiance Indian Hospital Board Inc.,
Plaintiff,
v.
Scott A. Kelso,
Defendant.

No. CV-25-08167-PCT-GMS

**ORDER**

Pending before this Court are the following motions: (1) a Motion for Summary Judgment filed by Plaintiff Fort Defiance Indian Hospital Board, Inc. ("FDIHB") (Doc. 13), (2) a Motion to Dismiss filed by Defendant Scott A. Kelso (Doc. 15), and (3) the Navajo Nation's Motion to Intervene (Doc. 24). For the reasons discussed below, FDIHB's Motion for Summary Judgment is denied, Dr. Kelso's Motion to Dismiss is granted in part and denied in part, and the Navajo Nation's Motion to Intervene is denied as moot.

## BACKGROUND

### I. Factual Background

FDIHB is a non-profit healthcare organization that owns and operates a hospital in Fort Defiance, Arizona and a healthcare clinic in Sanders, Arizona. (Doc. 14 at 2). Both facilities are located within the Navajo Nation. (*Id.*). The Navajo Nation designated FDIHB as a "tribal organization." (Doc. 1 at 5). Tribal organizations contract with the

federal government to provide healthcare services to the Navajo Nation, pursuant to the Indian Self Determination and Education Assistance Act. (Doc. 14 at 3).

Dr. Scott A. Kelso worked as an emergency room physician at the hospital operated by FDIHB. (Doc. 14 at 3). Dr. Kelso is not a member of the Navajo Nation. (*Id.*).

In 2021, the hospital's Chief Medical Officer initiated a professional review action after receiving written allegations that Dr. Kelso had provided substandard care. (*Id.*). On April 23, 2021, the hospital's peer review board recommended that Dr. Kelso's clinical privileges be revoked. (*Id.*). Dr. Kelso challenged this recommendation during two hearings conducted on October 26, 2021, and November 5, 2021. (*Id.*). The hearing officer concluded that Dr. Kelso's clinical privileges should not be revoked. (*Id.* at 4). The hospital board subsequently reviewed the hearing officer's determination, revoked Dr. Kelso's clinical privileges, and terminated his employment. (*Id.* at 5).

## II. Prior Actions

On March 28, 2023, Dr. Kelso filed an action against FDIHIB in the United States District Court for the District of Arizona ("Federal Action"). (Doc. 14-5 at 1). In that action, Dr. Kelso alleged violations of the Health Care Quality Improvement Act ("HCQIA") (42 U.S.C. §§ 11101–52), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), and various state law claims in connection with his dismissal from FDIHIB. (Doc. 14-5 at 18–26). On July 21, 2023, Dr. Kelso filed a notice of voluntary dismissal with prejudice, and the Federal Action was subsequently dismissed with prejudice. (Docs. 14-6 at 1–2; 14-7 at 1).

On March 29, 2023, Dr. Kelso filed a charge with the Navajo Nation Office of Labor Relations. (Doc. 14-8 at 15). On March 30, 2023, he received a Notice of Right to Sue from the Navajo Nation Office of Labor Relations. (*Id.* at 17). Dr. Kelso then filed a complaint with the Navajo Nation Labor Commission on March 21, 2024 ("NNLC Action"). (*Id.* at 4). In the complaint, Dr. Kelso alleges that FDIHB violated the Navajo Preference in Employment Act ("NPEA") when he was dismissed from his position because the hospital acted without just cause and harassed him. (*Id.* at 11–13). After this

action commenced, the Navajo Nation Labor Commission ("Commission") stayed the NNLC Action, pending the resolution of this action. (Doc. 14-9 at 1).

## DISCUSSION

### I. Legal Standards

#### A. Motion for Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. When considering motions for summary judgment, courts should construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he threshold inquiry . . . [is] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Consequently, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

#### B. Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting that the opposing party failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" acted as alleged. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In reviewing the complaint and any appropriately considered documents, the Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**C. Motion to Intervene**

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right and permissive intervention. To intervene as of right under Rule 24(a), the proposed intervenor must show (1) that its application for intervention is timely, (2) that it has a significantly protectable interest related to the subject of the action, (3) that the disposition may impair or impede its ability to protect that interest, and (4) that its interest is not adequately represented by the existing parties before the Court. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001).

In the case of permissive intervention, an applicant must demonstrate "(1) independent grounds for jurisdiction; (2) [that] the motion is timely; and (3) [that] the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (internal citation omitted). Permissive intervention is discretionary. *Id.*

In considering a motion to intervene, the Court "take[s] all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in

intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity*, 286 F.3d at 820.

## II. Analysis

### A. Exhaustion[1]

Dr. Kelso moves to dismiss the action on several grounds, including on the ground that FDIHB failed to exhaust tribal remedies. (Doc. 15 at 10). In reviewing this claim, the Court will accept all factual allegations in the complaint as true, and the Court will construe the pleadings in the light most favorable to FDIHB. *See Manzarek*, 519 F.3d at 1031.

Non-members of Indian tribes are permitted to challenge tribal court jurisdiction in federal court under 28 U.S.C. § 1331. *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004). However, "exhaustion is required before such a claim can be entertained by a federal court."[2] *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985). "[B]oth the Supreme Court and this circuit have held that non-Indian defendants *must exhaust tribal court remedies* before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction." *Burlington N. R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1244 (9th Cir. 1991) (emphasis in original). When exhaustion is required, a district court may exercise its discretion to "either dismiss a case or stay the action while a tribal court handles the matter." *Atwood v. Fort Peck Tribal Ct. Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008).

"Indian tribes occupy a unique status under our law." *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 851. This unique status arises because Indian tribes are "distinct, independent political communities, retaining their original natural rights," although they no longer possess all attributes of sovereignty. *Santa Clara Pueblo v. Martinez*, 436 U.S.

---

[1] FDIHB and the proposed intervenor, the Navajo Nation, addressed exhaustion further in their supplemental briefing. (Doc. 40 at 6–8; Doc. 42 at 4–9). The Court will disregard those arguments, as they are outside of the scope of the supplemental briefing that the Court authorized on October 5, 2026.

[2] Both parties, as well as the Navajo Nation, apply the exhaustion standards from *National Farmers* and its progeny. (Doc. 15 at 10–13; Doc. 16 at 8–9; Doc. 24-1 at 17–18). No party disputes the applicability of these exhaustion standards, despite FDIHB's status as a Navajo-chartered non-profit corporation. (Doc. 14-10 at 2). Thus, the Court will apply those standards.

49, 55 (1978) (internal citations omitted). Thus, principles of comity generally require federal courts to allow tribal courts the first opportunity to evaluate challenges to their jurisdiction. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15–16 (1987).

**1. Whether Exhaustion Has Occurred**

In this case, FDIHB concedes that the doctrine of exhaustion applies to the NNLC Action, but FDIHB argues it does not bar this action for two reasons. (Doc. 16 at 8–9). It first asserts that exhaustion has already occurred. (*Id.* at 9). FDIHB presents no factual allegations that support this argument. FDIHB states the Commission "placed its action on hold." (*Id.*). That statement suggests that the tribal remedies are ongoing, not that they are exhausted. The Commission's decision to stay the action falls short of the exhaustion requirement contemplated by the caselaw, which requires that both tribal trial courts and appellate courts complete their review of jurisdiction before the issue can be examined by a federal court.[3] *Elliott v. White Mountain Apache Trial Ct.*, 566 F.3d 842, 847 (9th Cir. 2009) (citing *Iowa Mut. Ins. Co.*, 480 U.S. at 16–17).

To further its argument, FDIHB states that "the Navajo tribunal apparently made a realistic appraisal of the law and concluded that the parties had gone far enough." (Doc. 16 at 9). FDIHB cites no facts to support this statement. While the Court "must accept factual allegations as true, [it] need not credit conclusory assertions or unsupported inferences." *Seagraves v. Wash. State Dep't of Child. Youth & Fams.*, 182 F.4th 1083, 1088 (9th Cir. 2026). Thus, the briefing does not show that exhaustion has already occurred.

**2. Exceptions to Exhaustion Requirement**

FDIHB argues in the alternative that if exhaustion is not already complete, FDIHB satisfies an exception to the doctrine, and exhaustion is not required. (Doc. 16 at 9). FDIHB, as the party asserting the exception, has the burden of proof. *See Goss v. United States*, 353 F.Supp.3d 878, 890 (D. Ariz. 2018) ("The party asserting an exception must show it applies."). There are four exceptions to the requirement of exhaustion:

---

[3] Pursuant to the briefing filed by the Navajo Nation, there are mechanisms by which the parties may seek the necessary appellate review for the purpose of exhaustion in the tribal courts prior to the enforcement of remedies. (Doc. 39 at 1–6).

> (1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay."

*Elliott*, 566 F.3d at 847 (quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)). FDIHB asserts that both the third and fourth exceptions apply to excuse FDIHB's failure to exhaust tribal remedies.

**a. Futility**

The futility exception "applies narrowly only to the most extreme cases." *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1203 (9th Cir. 2013). "Delay alone is not ordinarily sufficient to show that pursuing tribal remedies is futile." *Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999). The alleged incompetence or bias of tribal courts also does not constitute futility. *Graven v. Rhodes*, No. CV 10-408, 2010 WL 11570435, at *7 (D. Ariz. Nov. 24, 2010); *see also Iowa Mut. Ins.*, 480 U.S. at 19 (rejecting incompetence as a standalone exception to exhaustion). However, if a functioning tribal court does not exist, exhaustion is per se futile. *Johnson*, 174 F.3d at 1036.

FDIHB's allegations, taken as true for the purposes of a Motion to Dismiss, do not give rise to a plausible inference of futility. To support its argument that this exception applies, FDIHB states only that it "made unsuccessful efforts to conclude Defendant's tribal action." (Doc. 16 at 9). Furthermore, both parties' participation in the NNLC Action weighs against a finding of futility. *See Grand Canyon Skywalk Dev., LLC*, 715 F.3d at 1203 (indicating the participation of both parties in tribal remedies supported a finding that they were not futile). This allegation at most demonstrates that there has been delay, which is insufficient to find futility.

FDIHB's allegation regarding the Navajo Supreme Court Action also fails to support an inference of futility. Eleven months after the NNLC Action was filed, FDIHB

filed an Initial Petition for Writ of Prohibition, Writ of Mandamus, or Other Appropriate Writ, accompanied by a Request for Emergency Stay, with the Navajo Supreme Court. (Doc. 16-1 at 14). FDIHB then filed supplemental briefing with the Navajo Supreme Court on May 30, 2025. (*Id.* at 68). FDIHB states that the Navajo Supreme Court has taken "no action" on the petition. (Doc. 16 at 9 n.9). However, FDIHB fails to make any allegations beyond the nine-month delay, which fails to satisfy the standard for futility.

FDIHB's allegations also do not give rise to a plausible inference that there is no functioning tribal court, which would satisfy the futility exception. First, FDIHB does not expressly allege that there is no functioning tribal court. Further, there are insufficient allegations to meet this standard. In *Johnson*, the Ninth Circuit concluded that a delay of two years without a briefing schedule, scheduled oral argument, a meaningful response to the notice of appeal, or response to correspondence for a long period of time raised a genuine issue of fact as to whether there was a functioning tribal court. 174 F.3d at 1036. Here, the NNLC Action was pending for seventeen months before FDIHB moved to stay it. (Doc. 14-9 at 1). However, unlike *Johnson*, the Commission held at least two hearings on Motions to Dismiss, ruled on two Motions to Dismiss, accepted numerous filings, and appears to have scheduled other hearings during that period. (Doc. 16-1 at 29–31; 74–77).

While there has been a substantial delay in the Navajo Supreme Court's consideration, FDIHB alleges no facts beyond the delay that support an inference that the Navajo Supreme Court is non-functional. For example, in *Johnson*, the litigant never received a filing deadline and heard nothing from the tribal court for over a year after filing an appeal. 174 F.3d at 1034. FDIHB alleges no such facts.

**b. Plain Lack of Tribal Court Jurisdiction**

Exhaustion of tribal remedies is also not required if "it is 'plain' that tribal court jurisdiction is lacking." *Elliott*, 566 F.3d at 847 (internal citation omitted). A colorable claim to tribal jurisdiction is sufficient to defeat this exception. *Wilson v. Horton's Towing*, 906 F.3d 773, 777 (9th Cir. 2018). The Ninth Circuit held that "[i]f Plaintiff's claim is directly tied to events that occurred on tribal land, then tribal jurisdiction is colorable and

the exhaustion of tribal remedies is required." *Id.* at 779. This is consistent with the general proposition that tribes have substantial control over non-member activity on tribal lands. *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997). If the events did not take place on tribal land, tribal jurisdiction is proper if one of the *Montana* exceptions applies. *Wilson*, 906 F.3d at 779.

Here, there is a colorable claim to Navajo jurisdiction. FDIHB does not dispute that Dr. Kelso's claims arose from events that took place at Tsehootsooi Medical Center, which lies within the trust lands of the Navajo Nation. (Doc. 14 at 2). FDIHB also does not argue that Tsehootsooi Medical Center should not be considered tribal land for the purposes of tribal jurisdiction. Thus, there is a colorable claim to tribal jurisdiction under *Wilson* because the events underlying the claim occurred on tribal land.

FDIHB argues that the decision in *Goss v. United States* defeats any colorable claim to tribal jurisdiction. (Doc. 16 at 9). In that case, the Court held that the enforcement procedures of the NPEA are only available to members of the Navajo Nation. *Goss*, 353 F.Supp.3d at 888. However, the holding of that case is not dispositive as to whether a colorable claim to tribal jurisdiction exists. The Ninth Circuit has distinguished the threshold issue of whether a colorable claim of tribal jurisdiction exists from the ultimate issue of tribal jurisdiction. *Wilson*, 906 F.3d at 780. Tribal courts must be given the first opportunity to address jurisdictional questions if there is even a colorable claim to tribal jurisdiction, which is a low threshold. *Id.* (citing *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 856). Therefore, since there is a colorable claim to tribal jurisdiction in this case, the Navajo tribunals must resolve the jurisdictional question in the first instance, even if *Goss* is correct regarding the scope of the NPEA.[4]

### c. Preemption

Preemption does not defeat the need for exhaustion in this case. A typical federal preemption defense does not affect the necessity of exhaustion in tribal courts. *El Paso*

---

[4] This ruling, therefore, leaves open the question of whether the Commission has jurisdiction over Dr. Kelso's action under the NPEA.

*Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999). "[T]ribal courts, like state courts, can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different." *Id.*

However, the Supreme Court has reserved an exception for statutes that contain express preemption provisions that displace the normal comity given to state courts. *Id.* at 485. In *El Paso Natural Gas Co.*, the Supreme Court concluded that the unique preemption and removal provisions of the Price-Anderson Act exempted the parties from exhausting tribal remedies. *Id.* The preemption and removal provisions of the Price-Anderson Act were unique because they gave federal district courts original jurisdiction of any Price-Anderson claims, as well as removal as of right for any putative Price-Anderson claims brought in state court. *Id.* at 484–85. Congress included these provisions to provide immediate access to federal forums in Price-Anderson cases. *Id.* at 485–86. The Supreme Court also noted that these provisions of the Price-Anderson Act gave rise to something similar to complete preemption. *Id.* at 485 n.6. Complete preemption results only from a limited number of statutes, such as the Labor Management Relations Act and the Employee Retirement Income Security Act. *Id.*

The HCQIA contains no preemption and removal provisions that would exempt the parties from exhausting tribal remedies. Unlike the Price-Anderson Act, there is no express removal provision. *Compare* 42 U.S.C. §§ 2014(ii), 2210(n)(2) *with* §§ 11101–52. Furthermore, Congress provided immunity under the HCQIA in both state and federal courts, which weighs against a finding that Congress intended to provide exclusive federal jurisdiction for these claims. *See* 42 U.S.C. § 11111(1) (stating that there is no liability in damages for professional review actions "under any law of the United States or of any State (or political subdivision thereof) . . ."); § 11137(c) (providing immunity in *any* civil action related to reporting requirements under the HCQIA).

Finally, "every court to address the question" has found that HCQIA actions can be brought in state courts because the HCQIA does not constitute complete preemption. *See Rosenberg v. Advocate Health & Hospitals Corp.*, No. 11-C-2493, 2011 WL 1548391, at

*3 (N.D. Ill. Apr. 22, 2011) (collecting cases that found no complete preemption through the HCQIA) (quoting *Westmoreland v. Pleasant Valley Hosp., Inc.*, No. 3:08-1444, 2009 WL 1659835 (S. D. W. Va. Jun. 12, 2009)). By providing no express preemption and removal provisions, and by providing immunity in state court, there is no evidence that Congress intended the HCQIA to displace the comity provided to courts outside the federal judicial system. Therefore, FDIHB is required to exhaust tribal remedies.[5]

This result is consistent with prior cases in this District that have addressed whether tribal exhaustion is necessary when a party raises federal preemption as a defense. *Dish Network* and *Peabody Holding* provide an instructive contrast. In *Dish Network*, plaintiffs argued that Sections 152 and 303(v) of the Federal Communications Act preempted a Hopi ordinance. *Dish Network Corp. v. Tewa*, No. CV-12-8077, 2012 WL 5381437, at *2 (D. Ariz. Nov. 1, 2012). Despite the Act's preemption provisions, the Court focused on whether those provisions "expressly reserve[d] adjudicatory jurisdiction to any claims that may relate to the Communications Act to federal court." *Id.* at *6 (emphasis omitted). Finding they did not, the Court required the exhaustion of tribal remedies. *Id.* In contrast, in *Peabody Holding*, the Court found that the Employee Retirement Income Security Act did not require exhaustion because the statute includes a provision that provides federal courts with exclusive jurisdiction over those claims, and there was persuasive evidence that Congress intended employee benefit plan regulation to be an exclusively federal issue. *Peabody Holding Co., LLC v. Black*, No. CV-12-08252, 2013 WL 2370620, at *3–6 (D. Ariz. 2013). These cases demonstrate that language vesting the federal courts with exclusive jurisdiction in the statute is required to avoid the requirement of exhaustion. This language is not present in the HCQIA.

FDIHB has not made a plausible argument that it exhausted its tribal remedies, nor that an exception to the doctrine applies. Thus, this action must be dismissed.

---

[5] This analysis is only intended to resolve the threshold issue of whether exhaustion is required, not the merits of whether the HCQIA preempts tribal court remedies in this case.

### B. Remaining Claims

In its Motion for Summary Judgment, FDIHB raises potential bases for relief, including claim preclusion, preemption by the HCQIA, immunity under Title VII, immunity under other federal statutes and doctrines, and a lack of tribal jurisdiction over Dr. Kelso. These claims must be first addressed by the Navajo tribunals, so they are denied as moot. *See Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 856 (favoring a rule that allows tribal forums the first opportunity to evaluate the factual and legal bases for the challenge).

In his Motion to Dismiss, Dr. Kelso moves to dismiss the action on several other grounds. Dr. Kelso moves to dismiss the second, third, and fourth claims for relief on the grounds that the alleged immunities are inapplicable, and he moves to dismiss the fifth claim on the ground that the Commission does have jurisdiction. (Doc. 15 at 6–10). These claims also must be considered in the first instance by the tribal courts. Dr. Kelso also moves to dismiss for the failure to join the Navajo Nation as an indispensable party under Rule 19. (*Id.* at 13–15). Given the dismissal of this action for failure to exhaust, this claim is also moot. Finally, Dr. Kelso moves in the alternative under Rule 12(e) for a more definite pleading. (*Id.* at 15). This claim is denied as moot.

Dr. Kelso also moved for relief under Rule 56(d) to discover facts related to statements made by the Navajo Nation and FDIHB regarding compliance with the NPEA and the dismissal of the Federal Action. (Doc. 17 at 4). Given the dismissal of this action, these claims are moot.

### C. Navajo Nation's Motion to Intervene[6]

The Navajo Nation has moved to intervene pursuant to Federal Rules of Civil Procedure 24(a)(2) or 24(b)(1). (Doc. 24 at 1). Given the dismissal of this action because of FDIHB's failure to exhaust tribal remedies, the Motion to Intervene is denied as moot.

---

[6] FDIHB and the Navajo Nation addressed intervention further in their supplemental briefing. (Doc. 40 at 9–10; Doc. 42 at 10). The Court will disregard those arguments, as they are outside of the scope of the supplemental briefing that the Court authorized on October 5, 2026.

## CONCLUSION

FDIHB's Motion for Summary Judgment is denied as moot. Dr. Kelso's Motion to Dismiss is granted for failure to exhaust tribal remedies. The Motion to Dismiss is granted without prejudice to FDIHB re-filing after tribal remedies are exhausted. All other claims raised in the Motion to Dismiss are denied as moot. The Navajo Nation's Motion to Intervene is denied as moot, given the dismissal of this action.

**IT IS ORDERED** that Plaintiff Fort Defiance Indian Hospital Board, Inc.'s Motion for Summary Judgment (Doc. 13) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Scott A. Kelso's Motion to Dismiss (Doc. 15) is **DENIED in part** and **GRANTED in part without prejudice.**

**IT IS FURTHER ORDERED** that the Navajo Nation's Motion for Limited Intervention (Doc. 24) is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court terminate this action and enter judgment accordingly.

Dated this 24th day of November, 2026.

G. Murray Snow
Senior United States District Judge